IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TAMIKO BAKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 1:19-CV-3455-MLB-JCF |
| PINNACLE CREDIT UNION | : | |
| | : | |
| Defendant. | : | |

## NON-FINAL REPORT AND RECOMMENDATION

This case is before the Court on the Motion For Summary Judgment filed by Defendant Pinnacle Credit Union ("Defendant" or "Pinnacle"). (Doc. 38). For the reasons discussed below, it is **RECOMMENDED** that Defendant's motion be **DENIED**.

## Procedural History

On July 31, 2019, Plaintiff filed a Complaint alleging that defendants Equifax Information Services, LLC ("Equifax"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Pinnacle violated the Fair Credit Reporting Act , 15 U.S.C. § 1681, *et seq* ("FCRA").[1] (Doc. 1). Pinnacle answered Plaintiff's Complaint on November 1,

---

[1] Equifax and Wells Fargo have since been dismissed from this case via stipulation. (Docs. 31, 36; *See* 1/31/2020 Clerk's Entry of Dismissal and 2/28/2020 Clerk's Entry of Dismissal). Additionally, Plaintiff filed a motion for leave to amend her Complaint on February 5, 2020 (Doc. 33), but that motion was denied (Doc. 44).

1

2019. (Doc. 18). Discovery ended on February 21, 2020. (Doc. 25 at 2). Pinnacle filed this motion for summary judgment on March 5, 2020. (Doc. 38). Plaintiff responded on March 19, 2020 (Doc. 40), and Pinnacle filed its reply on April 2, 2020 (Doc. 43). With briefing complete, the undersigned now considers the merits of Pinnacle's motion.

## Factual Background

The facts, for summary judgment purposes only, are derived from Pinnacle's Statement of Undisputed Material Facts (Doc. 38-2 ("Def. SMF")) and uncontroverted record evidence. Plaintiff did not respond to Pinnacle's statement of undisputed material facts, and therefore those facts are deemed admitted. *See* LR 56.1B(2)(a)(2), NDGa. (providing that "[t]he Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise had failed to comply with the provisions set out in LR 56.1B.(1)"); *see also Aning v. Fannie Mae*, 633 Fed. App'x. 773, 776 (11th Cir. 2016) (unpublished decision) (finding that the district court did not err by applying LR 56.1 to deem the defendant's statements of material facts as admitted where the plaintiffs failed to follow that rule in responding to defendant's

motion for summary judgment). Nevertheless, the undersigned has reviewed the record to determine whether genuine issues of material fact exist to be tried. Yet the court need not "scour the record" to make that determination. *Tomasini v. Mt. Sinai Med. Ctr. Of Fla.*, 315 F. Supp. 2d. 1252, 1260 n.11 (S.D. Fla. 2004) (internal quotation omitted). In ruling on a summary judgment motion, the facts are construed in the light most favorable to the non-movant. *See Frederick v. Sprint/United Mgmt. Co.*, 26 F.3d 1305, 1309 (11th Cir. 2001).

On or about September 26, 2011, Plaintiff obtained a line of credit loan from Pinnacle, account number xxxxxx0-800 ("the Account"). (Def. SMF ¶ 1; Doc. 38-2, Ex. A ("Padin Aff.") ¶ 3).[2] Previous monthly statements for the Account indicate that Plaintiff owed a $188.00 payment in December 2011 and a $94.00 payment in February 2012. (Def. SMF ¶ 1; Padin Aff. ¶ 3; Doc. 38-2, Ex. A-1 at 1-2). Plaintiff paid off the Account balance in January 2018, the Account was closed in June 2018, and Plaintiff owed no more money on the Account. (Def. SMF ¶ 1; Padin Aff. ¶ 3). Plaintiff alleges in her Complaint that she obtained a copy of her Equifax credit report on March 20, 2019, which showed her Pinnacle Account tradeline as having a monthly payment amount of $94.00. (Def. SMF ¶ 3; Doc. 1 ¶ 10, 12). Plaintiff alleges that the reported monthly payment was erroneous, because the Account was paid off and closed by that time, meaning the monthly payment amount should have

---

[2] Linnette Padin is the Vice President of Lending at Pinnacle. (Padin Aff. ¶ 1).

been reported as $0.00. (Def. SMF ¶ 3; Doc. 1 ¶¶ 10-12). On or about May 15, 2019, Plaintiff submitted a dispute letter to Equifax disputing Pinnacle's tradeline. (Def. SMF ¶ 5; Doc. 1 ¶ 13). On or about May 23, 2019, Pinnacle received an Automated Credit Dispute Verification ("ACDV") from Equifax regarding Plaintiff's dispute. (Def. SMF ¶ 5; Padin Aff. ¶ 4; Doc. 38-2, Ex. A-2 ("Equifax ACDV") at 1). Pinnacle responded to the Equifax ACDV on May 24, 2019. (Def. SMF ¶ 5; Equifax ACDV at 1). In that response, Pinnacle confirmed that the scheduled monthly payment amount on the Account was $94.00, the last payment was made on the Account on January 1, 2019, the Account was closed on June 1, 2019, and the balance of the Account was $0.00. (Def. SMF ¶ 6; Padin Aff. ¶ 5; *see* Equifax ACDV). When Plaintiff obtained another copy of her Equifax credit report on July 27, 2019, the Account's tradeline was still showing the monthly payment amount as $94.00. (Doc. 1 ¶ 18). Then, asserting Pinnacle was negligently and/or willfully violating the FCRA by failing to correct the disputed tradeline, Plaintiff brought this action. (Doc. 1 ¶ 19).

## Discussion

### I.     Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be or is genuinely

disputed must support that assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan Servicing, LP*, No. 1:08-cv-2623-WSD, 2009 WL 5200292, at *4 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.") (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999)). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 322, 324. "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991), *cert. denied*, 506 U.S. 952 (1992); *see also* FED. R. CIV. P. 56(c)(1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan*, 932 F.2d at 1577. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249, 255. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255.

II. <u>Analysis</u>

Plaintiff alleges in her Complaint that Pinnacle negligently and/or willfully violated § 1681s-2(b) of the FCRA by failing to conduct a proper investigation of

Plaintiff's dispute, failing to review all relevant information available to it when conducting its investigation, and failing to direct Equifax to report the Account's tradeline with a monthly payment amount of $0.00. (Doc.1 ¶¶ 32-43).

"The FCRA was enacted 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" *Turner v. Wells Fargo Dealer Servs*., No. 1:17-cv-01257-TCB-CMS, 2017 U.S. Dist. LEXIS 219395, at *10-11 (N.D. Ga. Oct. 23, 2017) (quoting 15 U.S.C. § 1681(b)), *adopted by* 2017 U.S. Dist. LEXIS 219394 (N.D. Ga. Nov. 13, 2017). "To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies ('CRAs'), users of consumer reports ('users'), and furnishers of information ('furnishers')." *Id*. at *11 (citing *Chipka v. Bank of Am.*, 355 Fed. App'x. 380, 382 (11th Cir. 2009) (citing 15 U.S.C. §§ 1681b, 1681m, and 1681s-2)).

Plaintiff's claims rest on alleged violations by Pinnacle as a furnisher of information to CRAs. (Doc. 1 ¶ 7). "The FCRA imposes two separate duties on furnishers," i.e., "1681s-2(a) requires furnishers to submit accurate information to CRAs," while "§ 1681s-2(b) requires furnishers to investigate and respond promptly to notices of customer disputes." *Id*. (citing *Green v. RBS Nat'l Bank*, 288 Fed.

App'x. 641, 642 (11th Cir. 2008)). Section 1681s-2(b), which requires a furnisher to investigate and respond promptly to notices of customer disputes, "does provide consumers with a private right of action . . . but only if the furnisher received notice of the consumer's dispute from a CRA." *Turner*, 2017 U.S. Dist. 219395, at *12 (citing *Green*, 288 Fed. App'x. at 642). "A furnisher's duties under the statute are not triggered, however, until after a furnisher receives notice from a CRA of a consumer's dispute with regard to the completeness or accuracy of the information in a consumer's credit report." *Id*. "To state a valid FCRA claim pursuant to § 1681s-2(b), Plaintiff must plead and establish that

> he notified a consumer reporting agency that he disputed the completeness or accuracy of information in his credit report that was furnished to Defendant, that the CRA gave notice of Plaintiff's dispute to Defendant as a furnisher, and that Defendant did any one of the following: (1) failed to conduct a reasonable investigation of the identified dispute; (2) failed to review all relevant information provided by the CRA; (3) failed to report the results of its investigation to the CRA; or (4) if an item of information disputed by Plaintiff was found to be inaccurate, incomplete, or it could not be verified after any reinvestigation, failed to modify, delete, or permanently block the reporting of that item of information.

*Id.* at *12-13 (collecting cases). Additionally, the Eleventh Circuit has held that a plaintiff asserting a § 1681s-2(b) claim must show that the disputed information being reported by a furnisher was actually inaccurate or incomplete. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th. Cir. 2018). In *Felts*, the Eleventh Circuit stated:

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

*Id.* "The FCRA does not define the term 'accurate[.]'" *Foster v. Santander Consumer USA, Inc.*, No. 1:18-cv-4146-JPB-JFK, 2019 WL 8277273, *6 (N.D. Ga. Dec. 17, 2019) (citing *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 792 (M.D. Tenn. 2018)). "Courts applying § 1681s-2(b) in furnisher actions have looked to suits brought under § 1681e(b) against CRAs to construe the meaning of accuracy." *Id.* (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010) and *Hunt v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 17-cv-62094-BB, 2018 WL 1183357, at *4 (S.D. Fla. Feb. 26, 2018) (citations omitted) (comparing CRAs to furnishers when analyzing how to interpret accuracy for purposes of § 1681s-2(b), *aff'd*, 770 Fed. App'x. 452 (11th Cir. 2019)). The Eleventh Circuit has held that CRAs in § 1681e(b) actions should be held to a reporting standard of "maximum possible accuracy". *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1281 (11th Cir. 2017).

9

"Courts have offered two definitions of 'maximum possible accuracy[.]'" *Id.* Some courts have required only "'technical accuracy;' that is, information that is not false." *Id.* (citations omitted). Other courts have required that information be both technically accurate and not misleading or incomplete. *Id.* "The Eleventh Circuit has not explicitly adopted either approach." *Seay v. Trans Union*, No. 7:18-cv-204 (HL), 2019 WL 477827, at *3 (M.D. Ga. Sept. 30, 2019) (citing *Pedro*, 868 F.3d at 1281 ("Although the better reading of the Act requires that credit reports be both accurate and not misleading, we cannot say that reading the Act to require only technical accuracy was objectively unreasonable.")). The undersigned does not need to decide which definition applies here, because Pinnacle has not shown it met either one.

Pinnacle's only argument in its motion is that summary judgment is warranted because Plaintiff cannot show that Pinnacle was furnishing inaccurate information regarding the Account to Equifax. (Doc. 38-1 at 4-12). Specifically, Pinnacle asserts it was not inaccurate to report a $94.00 scheduled monthly payment amount on the Account after it was paid and closed, because the tradeline also accurately stated that the Account was paid, closed, and had a balance of $0.00, which would prevent anyone from being misled into believing Plaintiff was still paying off the debt. (*Id.*). Pinnacle identifies several cases in support of its position. (*Id.* at 6-12 (citing *Seay*, 2019 WL 477827; *Gibson v. Equifax Info Services, LLC*, No. 5:18-cv-465-TES, 2019 WL 4731957 (M.D. Ga. July 2, 2019); *Meeks v. Equifax Info. Services, LLC*,

10

No. 1:18-cv-3666-TWT-WEJ, 2019 WL 1856411 (N.D. Ga. March 4, 2019), *adopted by*, 2019 WL 1856412, at *1 (N.D. Ga. Apr. 23, 2019); *Her v. Equifax Info Services, LLC*, No. 1:18-cv-05182-CC-RGV, 2019 WL 4295280 (N.D. Ga. July 12, 2019), *adopted by*, 2019 WL 4295279 (N.D. Ga. Aug. 8, 2019); *Burrow v. Equifax Info. Services, LLC*, No. 1:18-cv-05134-JPB-LTW, 2019 WL 5417147, * 8-9 (N.D. Ga. Aug. 5, 2019), *adopted by*, 2019 WL 5410067 (N.D. Ga. Aug. 26, 2019)). Pinnacle primarily discussed *Seay* and *Meeks*.

In *Seay*, the plaintiff alleged that Trans Union and a furnisher violated the FCRA by failing to investigate a disputed tradeline that contained a positive "scheduled monthly payment" amount for an account that was paid and closed. *Seay*, 2019 WL 477827, at *1. The court there noted that the disputed information represented the historical payment terms of the debt in question, not a scheduled monthly payment. *Id.* at *4. The disputed information in question read, "Terms: $42 per month, paid Monthly for 4 months[.]" *Id*. The tradeline also noted that the account was closed and had a $0 balance. *Id.* The *Seay* court held that it was not inaccurate or misleading for a tradeline to contain historical payments terms of a closed account if the tradeline also shows the account is closed and has a $0 balance. *Id.* at *5 (citing *Gibson*, 2019 WL 4731957 * 9-10 (holding that a tradeline was accurate and not misleading when it reported only historical payment terms of an account while also denoting that the account was closed and had a $0 balance). Thus,

the court in *Seay* granted the defendant's motion to dismiss. In *Meeks*, this Court faced the same scenario and reached the same conclusion. The plaintiff in *Meeks* alleged the defendants were inaccurately reporting a "scheduled monthly payment" of $613.00 on a tradeline for an account that had been charged off and closed, meaning he owed no more monthly payments. *Meeks*, 2019 WL 1856411, at *1. However, the Court there noted that the tradeline actually contained the historical payment terms of the debt, not a scheduled monthly payment, along with notations that the account was charged off, closed, purchased by another lender, and had a balance of $0.00. *Id.* at *5. A screenshot of Trans Union's investigation results showed the disputed information read, "Terms: $613 per month, paid Monthly for 76 months[.]" *Id*. Thus, the Court held the tradeline was not inaccurate or misleading and dismissed the plaintiff's claim. *Id.* at *6-7; *see also Her*, 2019 WL 4295280, at *5-6 (holding it was not inaccurate for a CRA to report the historical payment terms of an account that had been charged off and closed where the tradeline also reflected that the account was charged off, closed, and had a balance of $0); *Burrow*, 2019 WL 5417147, at *8-9 (same).

    There is an important distinction between the cases cited by Pinnacle and this one. In those other cases, information in the disputed tradelines did not indicate "scheduled monthly payments", but historical payment "terms" of the loans in question. Here, on the other hand, the tradeline in question does not demand a

12

conclusion that the $94.00 monthly payment reflects historical payment terms. Pinnacle contends that the scheduled monthly payment amount Plaintiff is referring to is intended to represent historical payment terms. (*See* Doc. 38-1 at 4; Doc. 43 at 6). However, the facts, when viewed in the light most favorable to the plaintiff, do not compel that conclusion. The ACDV Pinnacle received from Equifax, which Pinnacle offers as evidence that it was furnishing accurate information, has a box reading "Sch. Payment" (which the undersigned interprets as "scheduled payment") containing the value "$94.00". (Equifax ACDV at 1). There is no other information in the ACDV to indicate that box is referring to a historical payment or the terms of the loan. (*See id.*). Without more, that box could be reasonably interpreted as referring to a scheduled monthly payment due in the present. Pinnacle also provides a previous account statement from February 2012 that shows a $94.00 payment was due on the Account that month. (Doc. 38-2, Ex. A-1 at 2). However, there is nothing in the ACDV to indicate to a reader that the "scheduled payment" box is referring to a payment from February 2012 or any other historical pay period. In each case cited by Pinnacle, the information being disputed was labeled "Terms" and denoted how many months those consumers were supposed to pay the monthly amount in question. Because the information in those cases reflects a temporal component in addition to a payment amount, the information in those cases is more clearly referring to historical terms of payment, not a current scheduled monthly payment

13

amount. Thus, the facts here are distinguishable from the facts present in Pinnacle's authority.

Furthermore, this Court has stated in addressing a motion to dismiss based on allegations identical to Plaintiff's that a tradeline could include "inaccurate or incomplete information" if it contained a positive scheduled monthly payment amount while also indicating that the account was closed and had a $0.00 balance. *Ellis v. Equifax Info Services, LLC*, No. 1:18-cv-5185-TCB-CMS, 2019 WL 3503538, at *4 (N.D. Ga. June 6, 2019) ("Plaintiff has alleged that Trans Union's report reflected that Plaintiff had a present, ongoing, scheduled monthly payment obligation for both of the two disputed accounts, even though those accounts were closed and had a zero balance. It is internally inconsistent for someone to have a present, ongoing, scheduled monthly payment on an account with a zero balance. If what Plaintiff alleges is true, it is plausible that the Trans Union reports included incomplete or incorrect information."), *adopted by*, 2019 WL 5406558 (N.D. Ga. June 25, 2019). Here, Pinnacle has affirmed that it was reporting the Account to Equifax as paid and closed with a $0.00 balance, but with a scheduled payment of $94.00. (Equifax ACDV at 1). A reasonable jury could conclude that it was technically inaccurate and misleading for Pinnacle to report a scheduled monthly payment for the Account when Plaintiff did not owe any more money on the Account.

This conclusion finds support in decisions from other circuits. In *Galea v. Wells Fargo Bank, N,A.*, 388 F. Supp. 3d 1212 (E.D. Cal. Aug. 1, 2019), the court denied Equifax's motion to dismiss a § 1681e(b) claim based on allegations similar to those here – a tradeline was showing a scheduled monthly payment amount on an account that had been discharged in bankruptcy, meaning the plaintiff no longer owed payments on that debt. *Galea*, 388 F. Supp. 3d 1212, 1214. There, Equifax argued that the court should apply *Meeks*, because the monthly payment amount in dispute represented historical payment terms. *Id.* at 1215. However, the *Galea* court refused to apply *Meeks*, noting that the disputed tradeline in *Meeks* was clearly reporting historical "Terms", while the disputed tradeline in *Galea* was labeled "'Scheduled Monthly Payment' – a phrasing that more intuitively suggests an ongoing payment obligation than the word 'Terms.'" *Id.* at 1216-17 (citing *Meeks*, 2019 WL 1856411, at *5 and *Freedom v. Citifinancial, LLC*, No. 15-cv-10135, 2016 WL 4060510, at *6 (N.D. Ill. July 25, 2016) (denying a furnisher's motion to dismiss a § 1681s-2(b) claim when it was reporting a positive scheduled payment amount and no balance for an account that had been discharged in bankruptcy, because "reporting a 'scheduled payment' could create the mistaken impression that Plaintiff still owed on the account, which was not accurate because his debt had been discharged in bankruptcy."). The undersigned finds the reasoning in *Galea* and

15

*Freedom* to be persuasive.[3] Thus, Pinnacle cannot establish that there is no genuine issue of material fact on whether it was reporting inaccurate information to Equifax regarding the Account.[4]

The Court recognizes that Plaintiff failed to follow the Local Rules to identify facts which remain in dispute in its response to this motion and cited no authority to support its position. (*See* Doc. 40). However, that shortcoming alone is not enough

---

[3] *But see Martin v. Equifax Info Services, LLC*, No. 4:19-cv-3691, 2020 WL 1904496 (S.D. Tex. April 17, 2020) (granting a defendant furnisher's motion to dismiss a § 1681s-2(b) claim where the plaintiff alleged the defendant was reporting a scheduled monthly payment amount of $20.00 on an account that was charged off and closed with a $0.00 balance, because "the charged off and closed notations would indicate that the monthly amounts were no longer due on an ongoing basis.") (citing *Rodriguez v. Trans Union LLC,* No. 1:19-CV-379, 2019 WL 5565956, at *3 (W.D. Tex. Oct. 28, 2019); *Meeks*, 2019 WL 1856411; and *Gibson*, 2019 WL 4731957).

[4] Plaintiff also attaches two credit reports to her response, allegedly obtained on March 1, 2019 from Equifax (Doc. 40-1 ("March 1 Report")) and March 20, 2019 from Equifax via Credit Karma (Doc. 40-2 ("March 20 Report")). Plaintiff argues those credit reports demonstrate Pinnacle was reporting inaccurate information on the Account, because the "Pays as Agreed" account status in the March 1 Report (Doc. 40-1 at 37) and the monthly payment amount of $94 listed for the Account in each report (*Id.* at 38; Doc. 40-2 at 8), when read together, could mislead a reader into believing that Plaintiff was actively making payments on the Account in March 2019. (Doc. 40 at 1-7). However, as Pinnacle correctly points out, Plaintiff did not properly authenticate these reports through an affidavit that satisfies the requirements of Federal Rule of Civil Procedure 56(c)(4) or properly present their contents to the Court through a response to Pinnacle's statement of material facts or a statement of additional material facts, as required by the Local Rules. (Doc. 43 at 7-11); *see* Fed. R. Civ. P 56(c)(4); LR 56.1(B)(2)(a-b), NDGa. For those reasons, the undersigned does not rely on these reports or arguments based on these reports in deciding the present motion. Nothing in this decision would preclude Plaintiff from using these reports at trial, assuming she can lay a proper foundation under the Federal Rules of Evidence.

16

to justify granting summary judgment. As the movant, Pinnacle bears the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The facts Pinnacle presented demonstrate that a genuine issue of material fact remains regarding whether Pinnacle was reporting inaccurate information to Equifax. Pinnacle did not advance any other grounds to justify granting summary judgment in its favor.

## Summary

It is **RECOMMENDED** that Defendant Pinnacle's motion for summary judgment (Doc. 38) be **DENIED.** The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO REPORTED AND RECOMMENDED** this 1st day of May, 2020.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge